## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 44648

| | |
|---|---|
| STATE OF IDAHO, | ) )  Boise, September 2017 Term |
| Plaintiff-Respondent, | ) )  2017 Opinion No. 115 |
| v. | ) )  Filed: November 8, 2017 |
| TERESA LEE TOLLMAN, | ) )  Karel A. Lehrman, Clerk |
| Defendant-Appellant. | ) ) |
| _____ | ) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Melissa Moody, District Judge.

The District Court's Order Denying Motion for Restricted Driving privileges is <u>affirmed</u>.

Eric D. Fredericksen, Idaho State Appellate Public Defender, Boise, attorney for appellant. Brian R. Dickson argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for respondent. Kenneth K. Jorgensen argued.

_____

JONES, Justice

### I.  NATURE OF THE CASE

In a case arising out of Ada County, Teresa Lee Tollman ("Tollman") appeals a district court's order denying her motion for a restricted driver's license. Specifically, Tollman argues that the district court erred when it failed to apply a 2015 amendment to Idaho Code section 18-8005(6)(d) (the "Amendment"), which permitted her to apply for a restricted driver's license. Tollman argues that the Amendment should have been applied because she filed her request for a restricted driver's license after the Amendment was enacted.

### II.  FACTUAL AND PROCEDURAL BACKGROUND

In December 2012, Tollman pled guilty to the felony crime of driving under the influence. In March 2013, the district court sentenced Tollman to a unified term of ten years,

1

with two and a half years fixed followed by seven and a half years indeterminate. The judgment required that Tollman's driver's license be absolutely suspended for five years beginning on the date of Tollman's release from custody.

On March 14, 2016, Tollman applied[1] for a restricted driver's license to drive to and from work. On March 21, 2016, the district court denied the motion for restricted driving privileges based on Idaho Code section 18-8005(6)(d), acknowledging that at the time Tollman was convicted, the statute read that a defendant convicted of felony driving under the influence:

> Shall have his driving privileges suspended by the court for a mandatory minimum period of one (1) year after release from imprisonment, and may have his driving privileges suspended by the court for not to exceed five (5) years after release from imprisonment, during which time he shall have absolutely no driving privileges of any kind.

The district court noted that in 2015 the legislature amended the section to read that a defendant:

> Shall have his driving privileges suspended by the court for a mandatory minimum period of one (1) year after release from imprisonment, during which time he shall have absolutely no driving privileges of any kind, and may have his driving privileges suspended by the court for an additional period not to exceed four (4) years, *during which the defendant may request restricted driving privileges that the court may allow if the defendant shows by a preponderance of the evidence that driving privileges are necessary for his employment or for family health needs . . .*

(Emphasis added).

Ultimately, the district court denied Tollman's application, stating as follows, in pertinent part:

> The statute makes clear that a defendant convicted of felony driving under the influence shall have absolutely no driving privileges of any kind for no less than a year following release from imprisonment. It is the burden of the movant (here, the Defendant) to show that that year has elapsed and the Defendant is eligible for restricted privileges. The defendant has provided no proof that she is eligible for restricted privileges. Therefore, the [c]ourt DENIES Defendant's motion for a restricted driver's license.

On September 5, 2016, Tollman filed another application for a restricted driver's license accompanied by proof that her release was over 13 months prior. In support of her request, Tollman sent the district court a letter, which stated that she had been sober since November 29, 2012, was very active in the Alcoholics Anonymous community, and planned to continue with

---

[1] Although the process to obtain a restricted driver's license is technically an application, the district court treated Tollman's application as a motion.

the program. Additionally, she explained that she had been working two jobs since April of 2016 and had been using Uber for transportation, which cost over $600 each month. Tollman also stated that her youngest daughter just started school at University of Idaho and she would like to be able to drive up to visit her because she was homesick.

The district court held a hearing on November 4, 2016, and affirmed what it held in its March 21, 2016, order:

> I'm going to say what that order says. It says I don't have the power, even if I wanted to, to give you back your driver's license. That's the point of that order.
>
> So it's not discretionary. It's not, oh, you know, I don't think you're doing well enough. Even if I wanted to give you your driver's license, I can't.

The district court went on to discuss that a court can take a driver's license away either as part of a criminal sentence, or as a condition of probation. The district court noted that Tollman's license was suspended as part of her sentence. The district court discussed the effect of the Amendment before ultimately denying Tollman's motion:

> The other thing that's super frustrating in your case . . . is that from the time that you were sentenced until now, the law itself has changed. So the legislature said after one year courts can get back in . . . even when it's part of the sentence, the judge can come back after a year and revisit that and say now you can have restricted privileges. But the change in the law doesn't do you any good because I am stuck with the law that was in effect in the first instance.

Tollman timely appealed.

### III. ISSUE ON APPEAL

Whether the district court had discretion to grant Tollman's application for a restricted driver's license.

### IV. STANDARD OF REVIEW

This Court exercises free review over the interpretation of a statute. *State v. Schulz*, 151 Idaho 863, 865, 264 P.3d 970, 972 (2011) (internal citation omitted). "Statutory interpretation begins with the statute's plain language." *State v. Leary*, 160 Idaho 349, 352, 372 P.3d 404, 407 (2016) (citing *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d, 1, 17 (2013)).

When this Court reviews a discretionary decision, it considers: "(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason." *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989) (internal citation omitted).

3

## V. ANALYSIS

**A.     The district court did not have discretion to grant Tollman's request for a restricted driver's license.**

Tollman contends that the district court erred when it denied her application for a restricted driver's license, arguing that a statute is not considered retroactive simply because it draws on facts that occurred prior to its enactment. Instead, Tollman argues that this case is not in the "realm of retroactivity" because she waited to file her application for a restricted driver's license until after the Amendment was in effect. Tollman asserts that the district court had the discretion to grant her application for a restricted license and failed to appreciate the outer bounds of its discretion. Tollman further argues that when an amendment is remedial or procedural in nature, that amendment should control the analysis of an action even if it was enacted after the event because the effect of such an amendment is prospective based on its influence over procedure to be followed in the future.

The State argues that the district court properly concluded that it lacked jurisdiction to amend Tollman's driver's license suspension. The State reasons that, in applying the plain language of the 2013 version of Idaho Code section 18-8005(6)(d), a sentence allowing restricted driving privileges would have been illegal at the time judgment was entered. The State argues that a statute is not applied retroactively absent clear legislative intent to that effect, and that there was no language in the Amendment indicating that it should be applied retroactively. Additionally, the State asserts that Tollman's position—that the Amendment was "procedural or remedial" in nature—is misguided because the Amendment is an alteration to a judge's scope in sentencing, and as a result the legislature had to expressly provide that it should apply retroactively. Because the legislature did not do so, the State argues that the district court properly denied Tollman's request.

Idaho law provides that "[a] statute is not made retroactive merely because it draws upon facts antecedent to its enactment." *Bryant v. City of Blackfoot*, 137 Idaho 307, 313, 48 P.3d 636, 642 (2002) (internal citation omitted). Further, "statutory amendments are not deemed to be retroactive unless there is an express legislative statement to the contrary." *State v. Leary*, 160 Idaho 349, 353, 372 P.3d 404, 408 (2016) (internal citations omitted). "A statute that is procedural or remedial and does not create, enlarge, diminish or destroy contractual or vested rights is generally held not to be a retroactive statute, even though it was enacted subsequent to the events to which it operates." *Bryant*, 137 Idaho at 313, 48 P.3d at 642 (citing *Floyd v. Board*

4

*of Comm'rs of Bonneville County*, 131 Idaho 234, 953 P.2d 984 (1998)). "Changes in procedural laws are held applicable to existing causes of action because the effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future." *Id*. (internal citation omitted).

The Idaho Court of Appeals has recognized that when the legislature amends a statute to reduce a punishment, "it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act." *State v. Morris*, 131 Idaho 263, 265, 954 P.2d 681, 683 (Ct. App. 1998) (citing *In re Estrada*, 48 Cal. Rptr. 172, 175, 408 P.2d 948, 951 (1965)). However, the Idaho Court of Appeals went on to hold that it was only proper to apply the newly amended law when the defendant "had not been convicted and sentenced until after the new sentencing legislation became effective." *Id*. at 267, 954 P.2d at 685. This reasoning is consistent with other jurisdictions. *See State v. Tapp*, 26 Utah 2.d 392, 395, 490 P.2d 334, 336 (1971) (The Utah Supreme Court held that if a statute is amended to reduce a penalty, and the amendment is effective before the sentence, the defendant is entitled to the lesser penalty as provided by law at the time of the judgment and sentence; however, if the amendment does not become effective until after the conviction and sentence, the sentence will be imposed in accordance with the law that was in effect at the time of conviction); *Estrada*, 48 Cal. Rptr. at 175, 408 P.2d at 951 (The California Supreme Court held that "[i]f the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then, in our opinion, it, and not the old statute in effect when the prohibited act was committed, applies."); *People v. Oliver*, 1 N.Y.2d 152, 160, 134 N.E.2d 197 (1956) (The New York Court of Appeals held that when an ameliorative statute reduces the punishment for a crime, "the law is settled that the lesser penalty may be meted out in all cases decided after the effective date of the enactment, even though the underlying act may have been committed before that date.").

Idaho Code section 18-8005(6)(d) addresses the driving privileges for a person convicted of driving under the influence of alcohol. At the time of Tollman's conviction, the statute required that a defendant:

> Shall have his driving privileges suspended by the court for a mandatory minimum period of one (1) year after release from imprisonment, and may have his driving privileges suspended by the court for not to exceed five (5) years after

5

release from imprisonment, during which time he shall have absolutely no driving privileges of any kind.

2015 Idaho Sess. Laws Ch. 60 (S.B. 1026). In 2015, the legislature amended this section to allow a defendant to apply for restricted driving privileges after one year with absolutely no driving privileges after his or her release from imprisonment. The Amendment provides that a defendant:

[M]ay have his driving privileges suspended by the court for an additional period not to exceed four (4) years, during which the defendant may request restricted driving privileges that the court may allow if the defendant shows by a preponderance of the evidence that driving privileges are necessary for his employment or for family health needs.

I.C. §18-8005(6)(d).

We hold that the district court properly determined that it did not have discretion to grant Tollman a restricted driver's license. Tollman argues that because she was not eligible to apply for restricted driving privileges until the Amendment was in effect, the Amendment is the applicable law. However, at the time Tollman received her sentence, Idaho Code section 18-8005(6)(d) provided that a court may suspend driving privileges for a period not to exceed five years after release from imprisonment, "during which time he shall have *absolutely no driving privileges of any kind*." 2015 Idaho Sess. Laws Ch. 60 (S.B. 1026) (emphasis added). Complying with the law at the time, the district court judgment required Tollman's driver's license be absolutely suspended for five years beginning on the date of Tollman's release from custody.

The Amendment provides defendants convicted of driving under the influence a new avenue of relief by allowing them to apply for restricted driving privileges. I.C. §18-8005(6)(d). When the legislature has acted to reduce a penalty by amending or repealing a statute, the new law is only applicable in cases where the sentence was not yet final. *See State v. Morris*, 131 Idaho 263, 265, 954 P.2d 681, 683 (Ct. App. 1998) (citing *In re Estrada*, 48 Cal. Rptr. 172, 175, 408 P.2d 948 (1965)). Tollman's sentence suspending her driving privileges was final in 2013, two years before the Amendment was enacted. As a result, the law that was in place at the time Tollman received her sentence is the applicable law. Further, the Amendment cannot be considered a procedural law because it creates a new right for defendants and changes the district court's sentencing guidelines. Absent an "express legislative statement," statutory amendments do not apply retroactively. *See State v. Leary*, 160 Idaho 349, 353, 372 P.3d 404, 408 (2016). There is no language in the Amendment that indicates the legislature intended it to apply retroactively.

6

Because Tollman's sentence was final at the time the Amendment was enacted, and there is no legislative intent that the Amendment apply retroactively, the district court properly denied Tollman's request for restricted driving privileges.

## VI. Conclusion

This Court hereby affirms the district court's denial of Tollman's motion for restricted driving privileges.

Chief Justice BURDICK, Justices HORTON, BRODY and Justice *pro tem* KIDWELL, **CONCUR**.